1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

YVONNE CACERES,

CASE NO. 3:14-CV-05908-DWC

11

Plaintiff,

12

v.

ORDER REVERSING AND
REMANDING FOR FURTHER
PROCEEDINGS

13

CAROLYN COLVIN, Acting
Commissioner of Social Security

14

Defendant.

15

16

17

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the

18

Defendant's denial of the Plaintiff's application for Social Security Disability Insurance Benefits.

The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. §

19

636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to

20

Proceed before a United States Magistrate Judge, Dkt. 19.

21

After reviewing the record, the Court concludes the ALJ erred at Step Two by failing to

22

consider whether the Plaintiff's diagnosis of bipolar disorder constituted a severe impairment and

23

by failing to properly assess the Plaintiff's credibility. However, additional issues remain in the

24

1  record which require resolution before a determination of disability can be made. Therefore, this

2  matter is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the

3  Acting Commissioner for further proceedings consistent with this order.

4  **PROCEDURAL & FACTUAL HISTORY**

5          On July 23, 2012, Plaintiff filed an application for Supplemental Security Income

6  benefits and Disability Insurance benefits. *See* Dkt. 10, Administrative Record ("AR") 223-28. In

7  her application, Plaintiff alleged she became disabled on December 1, 2003, due to ongoing

8  seizures, posttraumatic stress disorder, bipolar disorder, anxiety, and chronic lower back, left hip,

9  and ankle pain. *See* AR 78, 353-55, 349. Plaintiff's application was denied upon initial

10 administrative review on December 5, 2012, and on reconsideration on March 4, 2013. *See* AR

11 7. A hearing was held before an administrative law judge ("ALJ") on April 22, 2014, at which

12 Plaintiff, accompanied by a non-attorney representative, appeared and testified. *See* AR 42.[1]

13          On June 11, 2014, the ALJ issued an unfavorable decision, finding the Plaintiff was not

14 disabled within the meaning of Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security

15 Act. AR 16. Plaintiff's request for review of the ALJ's decision was denied by the Appeals

16 Council on September 12, 2014, making that decision the final decision of the Acting

17 Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. §§ 404.981,

18 416.1481. On November 24, 2014, Plaintiff filed a complaint in this Court seeking judicial

19 review of the Commissioner's final decision. Dkt. 3.

20          Plaintiff argues Defendant's decision should be reversed and remanded for the immediate

21 award of benefits, or in the alternative for further proceedings, because the ALJ erred by: (1)

22 _____

23 [1] During the hearing, the Plaintiff, through her representative, orally amended the alleged disability onset date to
   July 23, 2012 and withdrew her application for Title II Disability Insurance benefits. AR 16, 44. Therefore, this

24 Court's review is limited to the Plaintiff's application for Title XVI Supplemental Security Income benefits.

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS - 2

1   failing to find the Plaintiff's bipolar disorder and obesity were severe impairments at Step Two

2   of the sequential analysis, and subsequently failing to consider any associated functional

3   limitations; (2) failing to properly consider medical opinion evidence; (3) discrediting the

4   Plaintiff without providing specific, clear and convincing reasons; and (4) producing an

5   incomplete residual functional capacity assessment as a result of the aforementioned errors. Dkt.

6   12, p. 2.

7                                          **STANDARD OF REVIEW**

8          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

9   social security benefits only if the ALJ's findings are based on legal error or not supported by

10  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

11  Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

12  more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

13  mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

14  750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

15                                              **DISCUSSION**

16  I.     **Whether the ALJ Erred by Failing to Find the Plaintiff's Bipolar Disorder and
           Obesity were Severe Impairments at Step Two of the Sequential Evaluation.**

17
18         The Plaintiff first argues the ALJ erred by failing to identify all of the Plaintiff's severe

    impairments at Step Two of the sequential evaluation. Specifically, the Plaintiff claims the ALJ
19
    failed to find her diagnoses of bipolar disorder and obesity are severe impairments. Dkt. 12, at 5-
20
    8. Further, the Plaintiff claims this error was harmful because the ALJ's residual functional
21
    capacity evaluation does not reflect the limitations associated with these conditions, and the
22
    ALJ's failure to acknowledge these conditions led to an erroneous evaluation of the Plaintiff's
23
    credibility. *Id.* at 8-9.
24

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS - 3

1    **A.  Legal Standard**

2        At Step Two of the administration's evaluation, the ALJ is required to determine whether

3    the claimant has "a medically severe impairment or combination of impairments." *Smolen v.*

4    *Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (internal citation omitted); 20 C.F.R. §§

5    404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The Step Two evaluation is a *"de minimis* screening

6    device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482

7    U.S. 137, 153-54 (1987)). Thus, "[a]n impairment or combination of impairments can be found

8    'not severe' only if the evidence establishes a slight abnormality that has 'no more than a

9    minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (*quoting* Social

10   Security Ruling[2] ("SSR") 85-28) (*citing Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).

11   However, it is the Plaintiff's burden to "furnish[] such medical and other evidence of the

12   existence [of a severe impairment] as the Secretary may require." *Bowen*, 482 U.S. at 146

13   (*quoting* 42 U.S.C. § 423(d)(5)(A)).

14   **B.  Application of the Standard**

15        *1.  Obesity*

16        The ALJ found Plaintiff's Body Mass Index ("BMI") was 34 which is indicative of

17   obesity. AR 24. *See* SSR 02-1P, *available at* 2002 WL 34686281, *2. The Social Security

18   Administration "consider[s] obesity to be a medically determinable impairment and remind[s]

19   adjudicators to consider its effects when evaluating disability. . . . [ALJs are] to consider the

20

21

22   _____

     [2] Social Security Rulings do not have the force of law. Nonetheless, "they constitute Social Security Administration
23   interpretations of the statute it administers and of its own regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453,
     1457 (9th Cir. 1989). Thus, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent
24   with the [Social Security] Act or regulations. *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45
     (1984)).

1   effects of obesity not only under the listings but also when assessing a claim at other steps of the

2   sequential evaluation process." *Id.* at *1.

3         With the exception of one reference to the Plaintiff's BMI, the ALJ's written decision

4   includes no other references in the record of Plaintiff's obesity. AR 24. However, the Plaintiff's

5   obesity is similarly not discussed by providers throughout the medical records. Though several

6   providers observe the Plaintiff has a high BMI, or otherwise describe her as "obese," none of

7   those providers include obesity as a diagnosis, nor offer any insight into the significance of this

8   observation. AR 544, 563, 582, 651.  The Plaintiff does not cite, nor can the Court find, any

9   testimony or medical evidence in the record suggesting the Plaintiff's obesity in any way limits

10  her functioning or increases her pain.

11        The Ninth Circuit was confronted by a similar situation in the case of *Burch v. Barnhart*.

12  400 F.3d 676, 683-84 (9th Cir. 2005). In *Burch*, the panel found the court need not decide

13  whether the ALJ's failure to consider the claimant's obesity at steps two, three, and five of the

14  sequential analysis was error, because, among other issues:

15        There was no evidence before the ALJ, and none in the record, which states that
          claimant's obesity limits her functioning. Neither treatment notes nor any
16        diagnoses addressed claimant's limitations due to obesity. The medical record is
          silent as to whether and how claimant's obesity might have exacerbated her
17        condition. Moreover, claimant did not present any testimony or other evidence at
          her hearing that her obesity impaired her ability to work.

18

19  *Id.* at 683. Without any evidence in the record to support the Plaintiff's argument that her obesity

20  exacerbated her pain or imposed additional limitations, there is no way to demonstrate the

21  Plaintiff was prejudiced by the ALJ's failure to include obesity in the analysis. Consequently,

22  any error—if, indeed, it even was error—in excluding the evidence of obesity from the Step Two

23  analysis was harmless.

24

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS - 5

2.   *Bipolar Disorder*

Plaintiff also contends the ALJ erred by failing to account for Plaintiff's bipolar disorder. Several accepted medical sources and other medical providers either diagnosed the Plaintiff with bipolar disorder, or made a provisional diagnosis of bipolar disorder. *See*, AR 317-320, 372, 378-381, 423, 560, 566. These providers also observed the Plaintiff experienced severe limitations specifically and exclusively as a result of her bipolar disorder. For example, Dr. Hayward opined to several limitations as a consequence of the episodic, cyclical nature of the Plaintiff's bipolar disorder: "when in a depressive state, [the Plaintiff] struggles to maintain-self care or care of her surroundings, including cooking, cleaning. She is incapable of shopping due to panic attacks." AR 319. *See also* AR 375 ("she said that she can be deeply depressed for 3 months, then she gets energetic and happy for a week, perhaps two weeks . . . other than feeling energetic and happy, she cleans constantly"). Further, several providers conducted mental status examinations documenting paranoia, labile affect, and significant shifts in mood. *See, e.g.*, AR 317, 343, 419. Finally, the Plaintiff has a longitudinal history of bipolar disorder and paranoia, with diagnoses as far back as 2002. *See* AR 307, 339. These records indicate limitations greater than a "slight abnormality" with more than a minimal effect on her ability to work. *See Smolen*, 80 F.3d at 1290. Consequently, the Plaintiff offered sufficient evidence to satisfy her burden of demonstrating her bipolar disorder was a severe impairment.

At Step Two, the ALJ ultimately found the Plaintiff had the following severe impairments stemming from her mental health issues: "possible schizoaffective disorder" and "posttraumatic stress disorder." AR 18. The ALJ, however, did not offer any explanation as to how schizoaffective disorder or PTSD are equivalent to, or capture all of the symptoms and limitations of, bipolar disorder. *See Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) (holding

1   it was error to conflate "anxiety" and "panic disorder," and thus exclude panic disorder from the

2   claimant's list of impairments), *Ramirez v. Shalala*, 8 F.3d 1449, 1454-55 (9th Cir. 1993)

3   (recognizing there is no bright line distinction between mental illnesses and, due to common

4   symptoms, many mental illnesses are not mutually exclusive), *Stansbury v. Astrue*, 2012 WL

5   368029, *5 (W.D.Wa. 2012) (holding the ALJ erred at Step Two by failing to identify which of

6   the claimant's diagnosed conditions caused the claimant's "severe impairments"). Nor did the

7   ALJ justify omitting bipolar disorder from the Plaintiff's list of severe impairments. AR 18-19.

8   Indeed, the ALJ does not make any findings concerning bipolar disorder at Step Two

9   whatsoever. AR 18-19.  Consequently, the ALJ erred by failing to consider whether the

10   Plaintiff's bipolar disorder a "severe impairment."

11          **C.  Harmless Error**

12          Finding the ALJ failed to identify a severe impairment at Step Two is only the beginning

13   of the analysis. Next, the Court must consider whether any error is harmless. An error is

14   harmless if "there remains substantial evidence supporting the ALJ's decision and the error does

15   not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115

16   (9th Cir. 2012) (*quoting Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir.

17   2004)).  In the context of a Step Two determination, any error by the ALJ in failing to find a

18   specific severe impairment is harmless if the claimant nonetheless prevails at Step Two, and all

19   impairments—regardless of severity—are actually considered in all subsequent steps. *See Lewis

20   v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). *See also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.

21   2007), *Garcia v. Commissioner of Soc. Sec.*, 587 Fed.Appx. 367, 370 (9th Cir. 2014). But, if the

22   exclusion of a severe impairment leads to a residual functional capacity assessment that is

23   "incomplete, flawed, and not supported by substantial evidence in the record," or otherwise

24

1    prejudices the claimant, the error is harmful. *Hill*, 698 F.3d at 1153. *See also Burch*, 400 F.3d at

2    682.

3        It is undisputed the Plaintiff prevailed at Step Two. AR 18. Therefore, the critical

4    question is whether the ALJ actually considered Plaintiff's bipolar disorder and its associated

5    limitations in the remaining steps of the sequential evaluation. The Plaintiff contends certain

6    functional limitations caused by her bipolar disorder, namely deep depressive episodes which

7    result in a diminished capacity for self care, and markedly increased paranoia, were not

8    considered as part of her residual functional capacity. Dkt. 12 at 12, Dkt. 22 at 3, AR 317-320,

9    371, 553.  The Commissioner, for her part, argues the ALJ did consider bipolar disorder

10    throughout the record, and argues the Plaintiff has not shown how the ALJ's analysis of these

11    issues would be any different with the addition of bipolar disorder at Step Two. Dkt. 16, 2-4. The

12    Commissioner relies on the ALJ's statement that "all conditions were considered in combination

13    to determine the residual functional capacity, regardless of individual label or severity." Dkt. 16,

14    at 3, AR 19. However, the ALJ makes this statement in the context of finding the Plaintiff's

15    diagnosis of cervical dysplasia was not a severe impairment without any discussion of any other

16    impairment and whether that impairment (e.g. Bipolar Disorder) met the "severity" threshold

17    .AR 19.  Therefore without additional information, the Court cannot determine if the

18    "conditions" the ALJ considered included Bipolar Disorder.

19        Further, though the ALJ does reference instances where a provider diagnosed the Plaintiff

20    with bipolar disorder, the ALJ does not evaluate symptoms and limitations identified by the

21    Plaintiff or the providers, such as a decrease in the Plaintiff's ability to engage in self-care during

22    a depressive episode, nor does the ALJ explain how those symptoms or limitations could impact

23    the Plaintiff's residual functional capacity. AR 24-25, 29. *See Hill*, 698 F.3d at 1193,  *Stansbury*,

24

2012 WL 368029, *4-5 ("[I]n failing to distinguish these impairments, any evaluation of residual functional capacity at step-four is suspect."). *Cf. Burch,* 400 F.3d, at 684 (holding the ALJ's Step Two error was harmless because the ALJ recognized the claimant's obesity at Step Four, found the claimant's obesity "likely contributed to her back discomfort," and the residual functional capacity addressed all functional limitations that could have been attributed to obesity), *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding any error at Step Two would have been harmless, because the ALJ "extensively discussed" the claimant's bursitis at Step Four, discussed all related symptoms in the claimant's left knee, and crafted a residual functional capacity limiting the use the claimant's legs). Without these additional analytical steps, this Court cannot determine whether and to what extent those limitations could have factored in to the final residual functional capacity determination. *See, e.g.*, *Stansbury*, 2012 WL 368029, *4-5.

Finally, as discussed in Section II below, the ALJ's failure to consider bipolar disorder a severe impairment materially impacted the ALJ's assessment of Plaintiff's credibility, which further "calls into question the ALJ's findings concerning plaintiff's residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy." *Mahoney-Garcia v. Colvin*, 2015 WL 1965382, *5 (W.D. Wa. 2015) *adopted by Mahoney-Garcia v. Colvin*, 2015 WL 1965391, *1 (W.D. Wa. 2015). Consequently, the ALJ's residual functional capacity assessment is incomplete and unsupported by substantial evidence. *See Hill*, 698 F.3d at 1153.

**II.      Plaintiff's Credibility**

The Plaintiff argues the ALJ's failure to consider bipolar disorder at Step Two led the ALJ to improperly discredit the Plaintiff's subjective symptoms. Dkt. 12, 15-19. If an ALJ finds a claimant has a medically determinable impairment that reasonably could be expected to cause

1   the claimant's symptoms, and there is no evidence of malingering, the ALJ may reject the

2   claimant's testimony only "by offering specific, clear and convincing reasons." *Smolen v.*

3   *Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th

4   Cir.1993)). *See also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

5       The ALJ may consider "ordinary techniques of credibility evaluation," including the

6   claimant's reputation for truthfulness and inconsistencies in testimony regarding symptoms, and

7   may also consider a claimant's daily activities, and "unexplained or inadequately explained

8   failure[s] to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at

9   1284. However, "an ALJ may not single out moments of good health to discredit a claimant,

10  especially in cases involving mental impairments, which often present episodically." *See Taylor*

11  *v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011). Further, an ALJ's failure to

12  consider whether a claimant has a severe impairment, or to consider evidence supporting the

13  existence of a severe impairment, calls into question a credibility determination premised on

14  inconsistencies with the objective medical evidence. *See Mahoney-Garcia*, 2015 WL 1965382,

15  *6.

16      In this case, the ALJ found the Plaintiff's medically determinable impairments could

17  reasonably be expected to cause some symptoms; however, the ALJ determined the Plaintiff's

18  statements concerning the intensity, persistence, and limiting effects of those symptoms were not

19  entirely credible. AR 21-22. In reviewing the mental health symptoms in particular, the ALJ

20  contends: (1) the Plaintiff's activities of daily living were inconsistent with her claimed mental

21  impairments; (2) the Plaintiff reported her anxiety was treatable with medication; (3) the Plaintiff

22  made inconsistent statements concerning the degree of her symptoms; (4) the Plaintiff had

23  inconsistent medical and work histories; (5) the Plaintiff was inconsistent in seeking treatment;

24

and (6) the medical opinion evidence and mental status exams were inconsistent with the Plaintiff's subjective reports. AR 26-29.

Though diverse, all of the reasons offered by the ALJ for discrediting the Plaintiff's mental health symptoms rest on the severity of her symptoms and their impact on her life and functioning not being consistent from report to report. AR 26-29. However, Plaintiff is correct when she observes bipolar disorder is a mental impairment which presents on an episodic basis. Dkt. 12, at 17. *Kangali v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2011) ("[The ALJ thought the medical witnesses had contradicted themselves when they said the Plaintiff's mental illness was severe yet observed that she was behaving pretty normally during her office visits. There was no contradiction; bipolar disorder is episodic."). "[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (9th Cir. 2011). *See also Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) ("[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment."), *Delegans v. Colvin*, 584 Fed.Appx. 328, 330-31 (9th Cir. 2014). Without some indication the Plaintiff's bipolar disorder was (or was not) considered as part of the ALJ's credibility analysis, this Court cannot say the reasons offered by the ALJ are "clear and convincing."

For example, the ALJ twice cites one particular intake evaluation discussing the Plaintiff's bipolar diagnosis to suggest the Plaintiff was inconsistent in her reporting of her bipolar symptoms.  The ALJ noted the record "indicated a [prior] diagnosis of bipolar I disorder based upon the claimant's report of symptoms but she denied the same set of symptoms at this appointment." AR 25, 29, 423. However, the ALJ misreads this intake evaluation. The Plaintiff was not denying a *history* of bipolar I symptoms; instead, the provider had asked the Plaintiff

1   "about the possibility of [manic] symptoms *during this current intake*," which she denied. AR

2   423 (emphasis added). The provider observed the Plaintiff was nonetheless exhibiting "a slight

3   increase in the rapidity of her speech," suggested the issue would require further evaluation, and

4   made a rule-out diagnosis of bipolar disorder. AR 423.  In short, the ALJ misinterpreted evidence

5   pertaining to the episodic nature of bipolar disorder as evidence of inconsistency in the Plaintiff's

6   symptom reporting. *See Kangali* 454 F.3d at 628.

7        Beneath the day-to-day variation in the Plaintiff's mental status, a review of the whole

8   record reveals a longitudinal history of bipolar disorder and posttraumatic stress disorder, as well

9   as consistent Global Assessment of Functioning ("GAF") scores between 40 and 55. *See, e.g.*,

10  AR 307, 317, 339, 372, 381, 423, 564-65, 566. Confronted with a similar fact pattern, the Ninth

11  Circuit recently found an ALJ did not provide specific, clear and convincing reasons for

12  discrediting the claimant. *Garrison,* 759 F.3d at 1018. In order for the ALJ to rely on examples

13  of inconsistent symptom severity or treatment, the ALJ was required to explain *why* the

14  examples of inconsistent mental health treatment or reporting were, in fact, examples of

15  improvements or true discrepancies, rather than the ebb and flow of the claimant's mental

16  impairments. *Id.* (observing that, while the claimant's various conditions and symptoms would

17  come and go, the claimant consistently had diagnoses of bipolar disorder and PTSD, and

18  continually had GAF scores in the range of 50 to 55). Had the ALJ expressly considered the

19  Plaintiff's bipolar disorder in this case, the ALJ would have been required to explain why the

20  inconsistencies in question were not attributable to the Plaintiff's ongoing mental issues.

21        The Commissioner contends the ALJ was nonetheless entitled to rely upon the Plaintiff's

22  inconsistent treatment history as a basis for discrediting her subjective symptom testimony. The

23  Commissioner relies on *Molina v. Astrue* for the proposition "where there is no evidence that a

24

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS - 12

1  claimant's resistance to treatment was attributable to her mental impairment, rather than her own

2  personal preference, it is reasonable for the ALJ to conclude that the level or frequency of

3  treatment was inconsistent with the level of complaints." *Molina*, 674 F.3d at 1114. But,

4  providers throughout the record documented the Plaintiff's ongoing paranoia and noted it was a

5  basis for her resistance to treatment. *See, e.g.*, AR 341, 335.  In addition, the records also reveal

6  the Plaintiff had difficulty obtaining transportation, and on at least one occasion, was forced to

7  end treatment due to a termination of her Washington State Department of Social and Health

8  Services benefits. AR 330, 381, 499.This case does not present a situation, therefore, where the

9  only evidence in the record indicates the claimant's resistance to treatment was purely "personal

10  preference." Thus, the ALJ failed to provide specific, clear, and convincing reasons, supported

11  by substantial evidence, for discrediting the Plaintiff's subjective symptom testimony pertaining

12  to her mental health.[3]

13  **III.    Proper Evaluation of Medical Evidence**

14          In addition to the foregoing, the Plaintiff contends the ALJ erred by rejecting the opinions

15  of several examining physicians, as well as failing to discuss certain items of medical evidence in

16  the record. Since the ALJ will necessarily have to reconsider these issues as part of the remand,

17  the Court need not address these allegations. Nonetheless, the ALJ should evaluate the opinions

18  of Dr. Wheeler and Dr. Cline, and re-examine the medical opinions of Dr. Hayward and Dr.

19  Colby, as well as the residual functional capacity determination of Dr. McDonald.

20

21

22
[3] The Plaintiff also argues the ALJ erred by considering the Plaintiff's noncompliance with postoperative treatment
23  instructions following ankle surgery as a basis for discrediting her reports of *physical* symptoms and subjective pain
   testimony, because the ALJ first was required to make the findings "mandated" by SSR 82-59. Dkt. 12, at 19. This
   argument is unpersuasive. The ALJ made all necessary findings, and was allowed to consider the Plaintiff's
24  noncompliance with the treating physician's instructions.

**IV.     Appropriate Disposition on Remand**

As the Court has found the ALJ committed harmful error, the only question remaining is whether the case should be remanded for further proceedings, or for the immediate calculation of benefits. The Plaintiff relies on *Ramirez v. Shalala* to argue a remand for the award of benefits is the appropriate remedy in this case. Dkt. 22, at 4. *Ramirez*, 8 F.3d, at 1453-55. *Ramirez*, however, is inapposite. *Ramirez*, 8 F.3d *at* 1455 (remanding for an award of benefits as the ALJ erred in failing to find the claimant met or exceed a listed impairment at Step Three of the sequential analysis). Further, outstanding issues remain in the record concerning the Plaintiff's bipolar disorder diagnosis, which must be addressed by the ALJ on remand. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1105-06 (9th Cir. 2014). Therefore, the case should be remanded for additional proceedings.

<u>**CONCLUSION**</u>

Based on the above stated reasons and the relevant record, the undersigned finds the ALJ erred by failing to consider whether Plaintiff's bipolar disorder was a severe impairment at Step Two and by failing to consider the effects of bipolar disorder while evaluating the Plaintiff's credibility. Therefore, the court ORDERS this matter be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this order. Judgment should be for PLAINTIFF and the case should be closed.

Dated this 1st day of July, 2015.

David W. Christel
United States Magistrate Judge